UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| MERRITT A. SALYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 16-60-ART |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, *Acting* ) | **MEMORANDUM OPINION** |
| *Commissioner of Social Security*, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Social Security Administration ("SSA") denied Merritt Salyer's application for disability benefits. Salyer appealed that decision, but the SSA Appeals Council declined to review it. Salyer then sued the SSA here. The question is whether he did so in time.

I.

The federal government "is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Congress therefore decides how, and where, people may sue federal agencies. *See City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). When a person wants to sue the SSA, he must follow the rules that Congress set out in the Social Security Act. That Act includes a statute of limitations. 42 U.S.C. § 405(g). So if someone wants a federal court to review a final SSA decision, he must seek review "within sixty days after the mailing to him" of a notice of the decision, or otherwise "within such further time as the [SSA] may allow." *Id*. This time limit helps "move cases to a speedy resolution in a bureaucracy [the SSA] that processes millions of claims annually." *Bowen v. City of New York*, 476 U.S. 467, 481 (1986).

The SSA has interpreted the language of this rule with some leniency—in particular, that rather cacophonous phrase "after the mailing to him."  42 U.S.C. § 405(g).  The SSA interprets "mailing" as the day the person *received* the notice.  See 20 C.F.R. § 422.210(c).  And because these notices travel by "snail mail," the SSA presumes that people receive them five days after the SSA sends them, unless someone can show the SSA Appeals Council otherwise.  *Id.*  The Sixth Circuit has consistently accepted this interpretation of the statute—and has noted the "grace period" that it provides to unsuccessful applicants, since mail often travels faster these days.  *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 436 (6th Cir. 2007).  All told, Salyer had sixty-five days after the SSA reached a final decision on his application to contest that decision in federal court.

An administrative law judge ("ALJ") denied Salyer's application in November 2015.  R. 13-1 at 5.  Salyer appealed to the SSA Appeals Council, which, on February 19, 2016, sent him a notice stating that it would not review the decision.  R. 13-2 at 9.  In the notice, the SSA explained both that (1) the decision was now final, *id.*, and that (2) Salyer had sixty-five days to contest it in court, unless he could show that he "did not receive [the notice] within the [five]-day period," *id.* at 10.  If so, then he could "ask the Appeals Council to extend [his] time to file."  *Id.* at 11.  If not, then he would have to file his suit within sixty-five days—or, by April 25, 2016.[1]

He did neither.  Although Salyer dated his complaint April 25, he did not actually mail it until April 27.  *Compare* R. 1 at 1 (complaint with "4-25-2016" written at the top),

---

[1] Because the sixty-fifth day was Sunday, April 24, 2016, the deadline extended to the following day.  Fed. R. Civ. P. 6(a)(1)(C).

2

*with* R. 1-3 (envelope postmarked "APR 27, 16"). The Clerk received and filed the complaint on April 29. Even using the mailing date, however, Salyer did not "commence" this action by the day that he was supposed to do so. Nor did he ask the Appeals Council for more time. At least, the SSA asserts that it has no record of him doing so, *see* R. 17 at 1—an assertion that Salyer, in all his later motions, has not contested.

Thus, the SSA has moved to dismiss this action. R. 13. And since Salyer has not complied with the statute of limitations, it would appear that the Court must grant the SSA's motion and dismiss the complaint. *Cook*, 480 F.3d at 432 (affirming the dismissal of a late complaint); *see also Califano v. Sanders*, 430 U.S. 99, 108 (1977) ("[T]he congressional purpose, plainly evidenced in [Section 405(g)], [was] to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. . . . Our duty, of course, is to respect that choice.").

II.

There is a little bend to the rules, however. In some cases, a litigant might present a convincing reason to toll—*i.e.*, delay—a statute of limitations. If tolling applies, then a complaint need not be dismissed simply because it is untimely under the original deadline.

Two entities have the power to toll Section 405(g)'s sixty-five-day limit. The first is the SSA, which may choose to give an unsuccessful applicant more time to file his complaint in federal court. 42 U.S.C. § 405(g). Here, the SSA has not given Salyer such an extension. R. 13 at 5 (arguing that "there is no reason to extend the [sixty]-day limitations period").

Sometimes "deference to the agency's judgment is inappropriate." *Bowen*, 476 U.S. at 480 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976)). But even if the SSA does

not use its statutory power to toll the statute, the Court may use its equitable powers to do so. *Id.* (finding such tolling "fully 'consistent with the overall congressional purpose'" of Section 405(g) (quoting *Honda v. Clark*, 386 U.S. 484, 501 (1967)). This is the doctrine of equitable tolling. Where the "equities in favor of tolling" are "great" enough, the Court can ignore the SSA's decision and toll the statute itself. *Id.* (quoting *Mathews*, 424 U.S. at 330).

A.

Is this one of those times? Before the Court can answer that, it must find the right test. When, in *Cook*, the Sixth Circuit had to decide whether to toll Section 405(g), it opted for a five-factor balancing test. *See* 480 F.3d at 437. The court had plucked that test from its habeas precedents. *See Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). But after *Cook*, the Supreme Court made a new test the law—for habeas tolling cases, at least. This test has two elements, both of which a tardy litigant must satisfy before a court will use its equitable-tolling power. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). The Court must consider, first, whether the litigant has "been pursuing his rights diligently," and, second, whether "some extraordinary circumstance" prevented him from filing on time. *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland*, 560 U.S. at 649). And not just any old extraordinary circumstance, either. The circumstance must have been "both extraordinary *and* beyond [the litigant's] control." *Id*. at 756.

The Sixth Circuit has since applied this new test in habeas cases of its own. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749–50 (6th Cir. 2011) (concluding that the "two-part test has replaced [the] five-factor inquiry as the governing framework in this circuit"). And the Supreme Court has branched out, applying the test in non-habeas cases,

4

too. *See Menominee*, 136 S. Ct. at 755 (using the test to toll the Contract Disputes Act's time limitation, 41 U.S.C. § 7103(a)(4)(A)); *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1630–31 (2015) (using the test to toll the Federal Tort Claims Act, 28 U.S.C. § 2401(b)). The Sixth Circuit has also written, in a Section 405(g) tolling case, that a claimant is entitled to equitable tolling "only if he establishes exceptional circumstances," the second part of the two-part test. *Kellum v. Comm'r of Soc. Sec.*, 295 F. App'x 47, 49 (6th Cir. 2008). Though the court did not explicitly adopt that test—and went on to apply the five *Cook* factors—this case might signal a turning of the tides. Indeed, since the *Cook* test floated over from habeas cases, a change in those cases likely means a change for Section 405(g) tolling, too.

That said, neither the Supreme Court nor the Sixth Circuit has yet decided whether the two-part tolling test applies to Section 405(g) specifically. But the SSA advocates for it. R. 13 at 4–5. For his part, Salyer seemingly drafted his briefs with the two-part test in mind, basing his tolling arguments on extraordinary-circumstances grounds. R. 15. And as far as this case is concerned, this Court need not divine whether another tolling test should apply. As shown below, Salyer fails both parts of the two-part test. For similar reasons, each factor of the old *Cook* test weighs against him.[2] Because the Court must dismiss Salyer's complaint under either test, the Court will apply the one that both parties had on the brain while writing their briefs: the two-part test. *Cf. Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) ("[B]ecause petitioner is not entitled to equitable tolling under any standard, we assume

---

[2] Running through those factors briefly: As will be discussed, Salyer has not diligently pursued his rights, the third factor of the *Cook* test. He also knew about the filing deadline, which aligns against him factors one (actual notice), two (constructive knowledge), and five (reasonableness of continued ignorance). And as for factor four (prejudice to the other side), the Sixth Circuit explained in *Cook* that tolling makes trouble for the SSA, which handles millions of cases a year and depends on firm deadlines. *See Cook*, 480 F.3d at 437.

without deciding [the] application [of tolling under the two-part test] for purposes of this case."). That two-part test is the same one that higher courts have used, albeit in other contexts, since *Cook*.

### B.

So Salyer is entitled to equitable tolling if he has "been pursuing his rights diligently" but "some extraordinary circumstance stood in his way and prevented timely filing." *Menominee*, 136 S. Ct. at 755 (quoting *Holland*, 560 U.S. at 649). This is a "fact-intensive" inquiry. *Robertson v. Simpson*, 624 F.3d 781, 785 (6th Cir. 2010). Normally, the party that has failed to meet a deadline—here, Salyer—is responsible for showing facts that prove these elements. *See Pace* 544 U.S. at 418.

Salyer does not, however, explicitly request equitable tolling. *See* R. 15. Yet the SSA has raised the issue. *See* R. 13 at 4–5; R. 17 at 2–4. In response, Salyer has made some attempt to explain his delay. *See* R. 15 at 1−2. And as always, the Court treat pro se litigants like Salyer more leniently than it treats parties represented by trained lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, the Court will consider whether the facts of this case call for equitable tolling.

### 1.

If diligence were measured in briefs filed, then Salyer has been diligent. He has filed several just in response to the SSA's motion to dismiss. *See* R. 15; R. 16; R. 18; R. 19; R. 20. But in the tolling context, at least, copious briefing is not necessarily a measure of diligence. This first part of the tolling test exists to ensure that courts will not equitably toll a statute of limitations for a litigant who failed to comply with the statute through mere

"negligence." *Stiltner v. Hart*, No. 15-6363, 2016 WL 5403898, at *8 (6th Cir. Sept. 28, 2016) (citing *Holland*, 560 U.S. at 649, 653).³

Thus, filing briefs *after* the statute of limitations has already run will not turn a non-diligent litigant into a diligent one. Rather, the litigant must show that he made a "reasonable" effort to press his case *while* the clock was running. *Holland*, 560 U.S. at 653 (quoting *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996)). Such efforts take many forms. A reasonably diligent litigant might pester his lawyer for more action, or more information, throughout the case. *See id.* A reasonably diligent litigant will not, however, "s[i]t on his rights" until the last minute and then, after missing the filing deadline, ask the Court for lenience. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 463 (6th Cir. 2012) (quoting *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011)).

Here, Salyer apparently knew when the clock would run out: He dated his complaint April 25, the deadline, though he mailed it two days later. R. 1 at 1. Certainly, Salyer has shown some diligence since missing that deadline. But he failed to show the same diligence while the clock was still running. Nowhere in his many briefs does Salyer describe any steps that he took to file his complaint during the sixty-five days in which he knew he had to do so. Nor does he allege receiving the SSA's decision outside the presumptive five-day frame. Nor does he allege that he asked the SSA Appeals Council for an extension. Since the SSA explicitly told him that such a remedy was available, *see* R. 13-2 at 11, a reasonably diligent

---

³ Because this equitable-tolling test comes from the habeas context, many cases applying the test are habeas cases. As such, this Court has little choice but to cite habeas cases for support—even though a habeas case is, of course, not a social-security case. This Order relies on those cases to the extent they add gloss to terms like "diligence" and "extraordinary circumstances."

litigant would probably have requested it. But Salyer did not take that step—or any others. Thus, Salyer has not shown the kind of diligence that warrants equitable tolling.

Salyer responds that he suffered from two misconceptions during those fateful sixty-five days, and that those misconceptions caused him not to act in time. First, he apparently wrote the President about this case—and he thought that letter was "enough." R. 15 at 2. Second, he apparently thought that he had to "hand deliver" the complaint, but he had no feasible way of getting to Pikeville. *Id.*

Assuming that both assertions are true, however, Salyer still failed to pursue his rights with reasonable diligence. As discussed, Salyer seems to have received and read the SSA's decision letter, which informed him of the filing deadline. Thus, he knew that the way to challenge the SSA's decision was not to write the President, but to "file a civil action." R. 13-2 at 10. That information was on the very same page as the information about the filing deadline. Also on that page: four paragraphs on exactly *how* to file a civil action. *Id.* And if Salyer had any questions, the letter provided him with the telephone number and address for his local SSA office. *Id.* at 11. That office could have told him that he did not need to file his complaint in person—if he had ever called and asked.

Even if Salyer did not fully understand the process, his failure—for sixty-some-odd days—to use any available resources was negligent. So this argument fails. Because Salyer has not pursued his rights diligently, his case does not warrant equitable tolling.

2.

Given that Salyer fails the first part of the test, the Court need not address whether he faced any extraordinary circumstances. *See Menominee*, 136 S. Ct. at 757 n.5 (declining to

8

address one part of the test when the plaintiff had already failed the other). In case while there is no doubt about the first part, the Court will briefly address the second part for completeness sake.

A litigant satisfies the second part of the tolling test "only where the circumstances that caused [his] delay are both extraordinary *and* beyond [his] control." *Id*. at 756. "Extraordinary," of course, means "different from what it is . . . ordinary." *Extraordinary*, Merriam-Webster Online.[4] Being a pro se litigant, with "limited access to a law library," is generally not an extraordinary circumstance. *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012). Many people litigate without an attorney, and many of them must overcome the same hurdles. By contrast, trying to litigate with a mental impairment, or with a lawyer asleep on the job, can be an extraordinary circumstance. *See Robertson*, 624 F.3d at 784–86. Those obstacles are more uncommon, and they are beyond a litigant's power to control.

Here, Salyer says he failed to meet the filing deadline because he had many illnesses, no home, and little money. R. 15 at 2. Among people seeking social-security benefits, however, such obstacles are unfortunately common. *See, e.g.*, Michelle Stegman Bailey & Jeffrey Hemmeter, Soc'l Sec. Office of Ret. & Disability Policy, *Characteristics of Noninstitutionalized DI and SSI Program Participants, 2013 Update* (Sept. 2015) (listing the low income levels of disability recipients).[5] Thus, the circumstances that allegedly prevented Salyer from filing his complaint on time were not extraordinary.

---

[4] *Available at* http://www.merriam-webster.com/dictionary/extraordinary (last visited Nov. 14, 2016).

[5] *Available at* https://www.ssa.gov/policy/docs/rsnotes/rsn2015-02.html (last visited Nov. 14, 2016).

Nor were they beyond his control. As he has shown, Salyer knows how to file court documents. He also knows how to file them on time: Before this current action even began, in fact, Salyer timely appealed the ALJ's initial decision on his application to the SSA Appeals Council. That situation was much like this one. After the ALJ reached a decision, the SSA sent Salyer a letter explaining how—and by when—to appeal. R. 13-1 at 5. That time around, Salyer apparently had no trouble following the filing instructions. R. 13-2 at 9 (noting no timeliness issues in his appeal). He fails to show any reason why, this time around, the filing instructions were any harder to follow.

And after this current action began, Salyer has apparently had little difficulty sending in briefs. Presumably, he still suffers the same problems of illness, homelessness, and poverty; at least, he has not said otherwise. Those difficulties are undoubtedly significant. But if he can overcome them now, then presumably he could have overcome them before; again, he has not said what (if anything) changed between then and now. Moreover, Salyer's claims rest on blanket assertions that the SSA got his case wrong. This Order need not address the merits of those claims. But meritless or not, Salyer points to no circumstance that prevented him from developing those claims within sixty-five days.

Thus, Salyer neither pursued his rights diligently nor faced an extraordinary obstacle. As a result, he fails both parts of the tolling test, and the Court must dismiss his complaint.

III.

Salyer has also asked the Court to appoint him a lawyer. An indigent litigant, like Salyer, "has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty," *i.e.*, get thrown in jail. *Lassiter v. Dep't of Soc. Servs. of Durham Cty.*, 452

U.S. 18, 26–27 (1981); *see also Turner v. Rogers*, 564 U.S. 431, 443 (2011) ("[T]he Court previously ha[s] found a right to counsel '*only*' in cases involving incarceration."). Salyer is in no such danger. Granted, the Supreme Court has held that due process might nevertheless compel a court to appoint counsel in some cases—for example, to ensure that a litigant is not erroneously deprived of his rights. *See Lassiter*, 452 U.S. at 27–31 (discussing the factors of *Mathews*, 424 U.S. at 335). Given the above facts, however, Salyer's claim is time barred. No amount of lawyering can change those facts. Thus, due process does not compel the Court to appoint Salyer an attorney, and his request must be denied.

*   *   *

Accordingly, it is **ORDERED** as follows:

(1) The SSA's motion to dismiss, R. 13, is **GRANTED**.

(2) Salyer's motion to not dismiss, R. 16, is **DENIED**.

(3) Salyer's motion to appoint counsel, R. 15, is **DENIED**.

(4) This action is **DISMISSED** and **STRICKEN** from the Court's active docket.

(5) An appropriate judgment shall issue separately.

This the 28th day of November, 2016.



Signed By:
*Amul R. Thapar* AT
United States District Judge